# CIRCUIT COURT OF THE CITY OF ALEXANDRIA

Long & Foster
Real Estate, Inc.

v.

CLPF–King Street
Venture, L.P., et al.

June 15, 2007

Case No. CL07002388

BY JUDGE LISA B. KEMLER

Before the Court is Plaintiff's Motion for a Temporary Restraining Order ("TRO") and Defendants' opposition thereto. Following an evidentiary hearing on June 13, 2007, the matter was taken under advisement. Having considered the testimony presented and the documents introduced into evidence at the hearing, the parties' memoranda of law, as well as the factors applicable to a determination of whether a TRO should be granted, I find that the applicable factors weigh in favor of Plaintiff and, therefore, rule that the Motion for a TRO should be granted.

On May 31, 2007, Plaintiff, Long & Foster Real Estate, Inc., filed a Complaint seeking Injunctive Relief. Plaintiff, a real estate brokerage company, leases the premises located at 400 King Street in Alexandria, Virginia. Defendant, CLPF–King Street Venture, L.P., is Plaintiff's landlord and the owner of the property which includes the former Old Town Holiday Inn Hotel ("the Hotel"). Defendant, CLPF–Old Town Operating Company, L.L.C., is the operating agent. Plaintiff utilizes the leased space as a real estate office which is open between the hours of 9:00 a.m. and 9:00 p.m. Paragraph 40 of the lease provides, in part, that the "Lessee shall . . . freely, peaceably,

and quietly occupy and enjoy the full possession of the Demised Premises without molestation or hindrance by Lessor. . . ." Regarding the lessor's right to make repairs, paragraph 17 of the lease provides, in part: "Lessor shall use reasonable efforts to minimize interference to Lessee's business when making repairs, but Lessor shall not be required to perform the repairs at a time other than during normal working hours." Since approximately February 2007, Defendants have been engaged in making renovations and repairs to the Hotel, which include repairs to the first floor post tension slab located directly below the premises leased by Plaintiff. In making the necessary repairs, the construction work includes using jack hammers and chip hammers to break up the concrete in order to expose the post-tensioned cables and anchors so they can be inspected and repaired. Evidence presented at the hearing established that, since mid-May 2007, the frequent and nearly continuous very loud noise and vibrations resulting from jack hammering and chip hammering has made the leased space substantially unusable. Testimony presented by Plaintiff that the agents who work out of the office cannot engage in ordinary business activities, including talking on the telephone and meeting with clients and lenders. Instead, the agents have to try to work from home or use other offices leased by Plaintiff. In addition, evidence was presented that, even though Plaintiff has hired twenty new agents, Plaintiff's year-to-date income has declined approximately 17% during the first quarter of the year as compared to last year and some agents have complained of possible hearing loss due to the intolerable noise levels. Anne Rector, vice president and office manager of the leased premises, testified that, towards the end of May, the parties reached an agreement limiting any jack hammering and other loud work to the hours of 7:30 a.m. and 11:00 a.m. G. Miller Smyth, the property owner's representative on the project, testified that they have tried to make accommodations to enable Plaintiff to conduct business, but that Defendants did not agree to a noise limitation other than to limit jack hammering in the courtyard area. This testimony appears to be contradicted by the e-mail from Mr. Smyth to Anne Rector dated May 25, 2007 (Plaintiff's Exhibit 8.) The evidence also established that, while the repairs that are being made are necessary, there are no safety issues or structural dangers requiring that the repairs be made immediately. John Shumar, senior superintendent with Forrester Construction Company, testified that 90% of the jack hammering is complete, but that the chip hammering is scheduled to continue until August. He also testified that, if they have to limit the chip hammering to the hours of 7:00 a.m. to 11:00 a.m., the chip hammering would not be completed until October (an additional two months).

Although there is no reported Virginia appellate decision discussing the standard to be applied in determining whether a restraining order should be granted, various circuit courts have applied the four-factor analysis used in *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977), in determining whether to issue a preliminary injunction. The four factors are: (1) likelihood that moving party will prevail on the merits; (2) irreparable injury to the moving party absent the requested injunction; (3) harm to the non-moving party should the Court grant the requested injunctive relief; and (4) whether the moving party has an adequate remedy at law. See also *Plate v. Kincannon Place Condo. Ass'n*, 30 Va. Cir. 323 (1993). Of the four factors, (2) and (3) are considered most important. *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991). If, after balancing these factors, the balance tips "decidedly" in favor of the moving party, an injunction is appropriate. *Id.*

In light of the aforesaid factors, a temporary restraining order will issue as follows: (1) Defendants are permitted to engage in jack hammering, chip hammering, or other work that causes loud noise *anywhere* on the project between the hours of 7:00 a.m and 11:00 a.m.; (2) Defendants are permitted to engage in jack hammering, chip hammering, or other work that causes loud noise after 11:00 a.m. *only* in areas other than the areas that are in close proximity to Plaintiff's leased premises. The areas in close proximity to Plaintiff's leased premises are the following: the portion of the garage directly beneath the Plaintiff's leased premises, the ground level courtyard, the ground level facing King Street, and the ground level facing Royal Street.